Roberts. Roberts. Will your argument next in Case 12-1315, Petrella v. Metro-Goldwyn-Mayer. Mr. Bibas. Mr. Chief Justice, and may it please the Court, this Court has never applied laches to constrict a Federal statute of limitations and rejected such a claim just four years ago. Laches cannot bar these copyright infringement claims for four reasons. First, under the separate accrual rule, these claims are timely. Respondents committed these discrete wrongs from 2006 on, but would use Petitioner's failure to challenge earlier wrongs to foreclose these later claims before they even arose. Second, laches is a gap filler, but Congress filled this gap with a bright line statute of limitations. Third, Congress chose a clear, predictable timeliness rule. And fourth, injunctive relief must remain available to protect Petitioner's property right against ongoing violations. Lest Respondents effectively get a compulsory license for free for the next four decades. Scalia. Let's take your second point. What a statute of limitations says is not that you are scot-free within the statute of limitations period. It simply is a negative. It says you can't be sued beyond that, right? Yes. The wording of the statute of limitations. It seems to me there is nothing, if we adopted the position of the other side, there is nothing that would cause the statute of limitations to be frustrated. This is not purely about the text, but about the background principle of equity that laches is. Laches' domain was as a gap filler where there was no timeliness rule. Congress has occupied the field with a timeliness rule here and displaced it. That's why laches developed inequity to compensate for the absence of limitations periods. Scalia. Yes, but it continued to be used in equity even when there were limitations period, didn't it? It may have started that way, but that was certainly not its only use. Not where there was a binding, a Federal one. Where there was an analogous one that was borrowed loosely from a State in diversity, Federal courts understood themselves to have flexibility to vary from the State limitation period because it wasn't Federal law. Well, it was Federal law. If the Federal law adopted it, it was Federal law. This was in the pre-Erie days where there was understanding that there was a general Federal common law and equity that those cases were decided. This Court in Holmberg v. Armbrecht understood this almost as a Chevron-type argument. Has Congress spoken to the timeliness issue? If yes, Holmberg says the congressional statute is definitive. If not, Holmberg says, then its silence delegates the matter to, quote, judicial implication. And then there's some judicial flexibility on timeliness issues. There's no question that non-timeliness doctrines can cut claims off within the limitations period, but not the timeliness doctrine of latches. Alito, should we see anything in the particular way this provision is worded? It says, Yes, Your Honor, that's why I said it's not strictly a textual argument. It's about the domain of latches and the congressional understanding of limitations periods. That's what how this Court read them in the Ledbetter case. If I might quote, A freestanding violation may always be charged within its own charging period, regardless of its connection to other violations. We repeated this same point more recently in Morgan. Quote, The existence of past acts and the employee's prior knowledge of their occurrence does not bar employees from filing charges about related discrete acts, so long as the acts are independently discriminatory and charges addressing those acts are themselves timely filed. This Court's understanding in Morgan and in Ledbetter was the period is to remain open and timeliness doctrines are not to cut them short because those doctrines such as latches are where there isn't a binding congressional statute of limitations. Breyer, I mean, I guess the ones that increase the statute of limitations, do they apply to? It doesn't say anything about that. The timeliness doctrines of tolling and the discovery rule are distinguishable. This Court understands that when Congress tolling and discovery rules developed in order to interpret limitations periods. You cannot have a tolling or discovery rule without a limitations period to interpret. So this Court has said it's an accoutrement, it's intertwined with interpreting the word accrues for a discovery rule. We're interpreting 3 years. Do you count the period of infancy? Do you count Saturdays or Sundays? It interprets a statute of limitations. Breyer, I just take exactly your words and I fill in instead of tolling, latches. So? Tolling has always been used to interpret. Breyer, yeah, yeah, all right. But I mean, now what you're talking about is custom. You're not talking about language. Because language sounds to me like the same. And so then I'm obviously going to ask you, if the courthouse burns down or fraudulent concealment or, you know, there are dozens of such, not dozens, but there are quite a few such doctrines, and why would we apply those and not apply the shortening ones, too? Well, first, briefly, Respondents concede there are no words in this Act that even give a toehold for latches. But, second, the state of the law in 1957 and to this day is that tolling and discovery rules were long background periods for interpreting limitations rules.  This Court interprets it as a long period of time. Scalia, they originated in equity, just as latches did. The tolling rules originated in equity. They were brought into law. What troubles me about this case is this. Did the adoption of the new rules of Federal procedure disable courts from bringing over anything else from equity into law? Tolling used to exist. It was brought over into law before the new rules of civil procedure. And, therefore, you would not be altering any substantive right to continue to apply that tolling rule. Your argument here is that to apply latches is to alter a substantive right and, therefore, under the Rules Enabling Act, is not allowable. My question is this. Do you think that the Rules Enabling Act prevented courts from doing what they had in the past, that is, not using the Act as the means of saying everything that was in equity is now in law, but rather think, sitting back and thinking, you know, here's another part of equity that should be brought over into law, not because the Act says so, but because we think it ought to be, just as we thought 50 years ago, the tolling, the tolling provision should be brought over into law. Have courts been disabled from doing that by reason of the Act? Yes. Not only the words of Section 2072b that may not enlarge, abridge, or modify any substantive right, but this Court's holding in Grupo Mexicano recognized that the historical limits on equitable remedies are limited to where they were at the times of the Act. Scalia. But it says the rules shall not alter or amend any substantive right, and what I'm saying is it isn't the rules that do it, it's just we have made the independent justification that this ancient rule, which was applied in equity, ought to be implied in law as well. I'd point to this Court's having repeatedly rejected that extension. In Mack, and then Russell, and Holmberg, and Oneida, and Merck just 4 years ago, this Court has repeatedly said latches cannot shorten these statutes of limitations. It's not applicable. Especially if it's in the statute of limitations. Sotomayor, do you have to accept Justice Scalia's premise that the Court in all areas is deprived of that right? Can you concentrate on your arguments why in this particular Act, even if we had the option, we shouldn't exercise it? Yes, Your Honor. I think it's very salient that this is the Copyright Act, an act with detailed statutory safeguards against financial and evidentiary prejudice. Moreover, the copyright is a property right registered with the government with a clear registry that wants clear, simple, predictable, easy-to-apply rules as the policy of the 76th Copyright Act. And this Court's case law in the trademark context from the late 19th century says when we're dealing with a property right that extends into the future, injunctive relief has to remain available to vindicate that property right, unless there is something that rises to the level of a distinct defense, an abandonment or an estoppel. But the problem is that this is a property right that has to be vindicated. Sotomayor, this is my problem, and I sort of disagree with you fundamentally. Because I don't know that you're entitled to injunctive relief, but you might be entitled to a compulsory license. And by that I mean you have – this is the government's position, and maybe I'm arguing for it. The government says you might be entitled to payment for the use of your copyright because it belongs to you and there shouldn't be some adverse possession right that the other side gets. But in terms of injunctive relief, given their reliance on your failure to act for 18 years, they shouldn't be put out of business and told that they can't continue in their business. And so that's the kind of policy I'm talking about, which is break down the remedies and tell me I'm more moved by the fact that someone could take over your copyright than I am by your injunctive relief argument. Yes, Your Honor. You're correct that the Copyright Act has provisions that forbid adverse possession, that require transfers to be in writing, and so the right itself can't be defeated. So I agree with your premise. Now, as to how that bears on injunctive relief, we do not take the position that an injunction must automatically issue. This Court in eBay said very clearly it mustn't. But one must look at the traditional test for equitable relief. And one of the factors in that test is prejudice to the defendant. But it must be balanced against prejudice to the plaintiff and the public interest. And that is foreclosed if one uses latches as a threshold bar. It's foreclosed if one uses it as a distinction. Sotomayor Why? It's being entitled to money for their infringement. Three years. You only go back three years, but if they continue to infringe in the future, presumably you can get an order giving you damages for that. We certainly agree that we're entitled to damages going forward, but we don't agree that that's exclusive because I'd point to the Chief Justice's concurrence in the eBay case. A copyright is a property right. It comes with the right to exclude presumptively. That right can not necessarily be fully enforced in all circumstances, but presumptively it ought to remain on the table to enforce with injunctive relief. Now, you are correct, Respondents have entered into the commercial agreements for the arrangements for the next two years. It would be reasonable for a court sitting in equity to say, let's balance the hardships. The hardships between now and 2015 might look different from the hardships in 2015 until the middle of the 21st century. We might tailor the duration and the scope of injunctive relief to, say, some damages, some royalties for a few years, but that's not a reason to defeat her right to exclude for the next four decades. Mr. Barbaros, I would have thought that there's something in the copyright context that cuts against you, and that's that because of the separate accrual rule and the feature of these rolling statutes of limitations combined with very, very lengthy copyright terms, that essentially a plaintiff can not bring suit for years, decades, and time the suit in order to maximize her own gain. That strikes me as something that we don't usually see in statute of limitations cases. I mean, we don't have very many cases where courts have applied latches as against the statute of limitations, but that's because you can't think of many instances in which it would be considered unfair to take the entire statute of limitations to bring a suit. But in this context, you look at something that seems very different. A plaintiff can wait 20 years given the way the separate accrual rule works. Barbaros, Your Honor, I think your consideration is cut in favor of our position. Whether our client brings suit now or 20 years from now, she gets 3 and only 3 years' damages. The evidence in this case is that creative works are worth the most right after their release, and so the value of the claim goes down. Respondents get to keep the first 17 years of profits if she waits. So she has every incentive, as the amicus briefs indicate, to file suit early. And indeed, courts can use adverse inferences against plaintiffs who delay, draw inferences or missing witness instructions from their delay. But let me point out that there are plenty of situations in which there is a delay in suit. Take Bay Area Laundry. Take a standard 30-year mortgage. The mortgagee who waits until year 20 doesn't get to claim 20 years' worth of payments, but there's nothing that debars that mortgagee from claiming payments for year 17 to 20. It would radically upend the law to say that. And to come back to your point that we don't see latches in these cases, that again cuts our direction. This is not the case. Scalia, The mortgagor does not invest substantial amounts of money the way MGM did here on the assumption that since suit hasn't been brought for 20 years, there is no valid claim. I mean, that's the difference in that situation. You're talking about inducing or causing at least people who proceed in good faith on the assumption that 20 years have gone by, nobody is questioned are doing it. They invest substantial amounts of money. And then when that money starts to pay off, you file suit and you get three years' worth of their profits. Under the Copyright Act, they are entitled to deduct all the expenses that are attributable to earning the profits from infringement. So plaintiffs don't get a dime until Respondents recoup those expenses. Moreover, one who has notice of a registered copyright in the face of protest has no legitimate good faith expectation in continuing to infringe. Either file a declaratory judgment act, engage in settlement negotiations, or infringe at your peril.  Roberts. Thank you, counsel. Ms. Saharsky. Mr. Chief Justice, and may it please the Court. The only question before the Court is whether the courts below were right to bar the suit entirely on Latches' ground. And on that question, we agree entirely with Petitioner that the suit should not have been barred at the outset. But it is the government's view that Latches is available in extraordinary cases to bar copyright infringement claims brought within the statute of limitations for two reasons. First of all, Latches, like equitable tolling and other equitable principles, was a background principle that Congress acted against when it enacted the statute of limitations, and it said nothing to bar it. We've already had the discussion here at court today about the text and how it doesn't bar it. But second, for the reasons that Justice Kagan gave, the copyright situation is unique in that there is this separate accrual rule which allows a person to sue many years after the infringing conduct started, so that it makes sense to at least be able to consider Latches. Now, our view, though — On damages as well as injunctive relief? I thought your brief said injunctive relief but not damages. Right. We would distinguish between equitable relief and legal relief, and that's because that distinction was well established in the courts of equity and in the courts of law and postmerger at the time this Court enacted in 1957. We don't make that distinction with respect to equitable tolling. Why would we make it here? Well, because the history is different. The history that this Court recognized in cases like Mack, for example, 1935 case, where that was a legal claim, the Court said Latches within a term of the statute of limitations is no defense at law, and the Court has continued to pick up that language in case after case. There are numerous cases cited in the brief. Why can't we change our mind? Why can't we change our mind? Because this is a statutory claim and a statute of limitations that Congress put in place. And the question is, what is the background rule against which Congress was acting? Congress could change the background rule, but because this is a statutory action, it's for Congress to do it as opposed to the Court. Scalia, and you say that none of the other instances in which we brought into law equitable doctrines, none of those were applied with respect to a prior enacted Federal statute. Is that your position? No. I'm not saying to look it up. Right. What I'm saying is specific to the Latches defense, and what I'm saying there is that there is a long history that Latches did not apply at law and that this Court has continued to recognize that. There was a long history that tolling didn't apply at law, and then we changed our mind. Right, but I'm saying that And you're saying we never changed our mind where there was a statute of limitation to the Federal statute of limitations? I don't believe that. I'm saying that in the Latches context, we are not aware of any instances in which this Court has used Latches to bar a claim at law. That's not surprising, because to show Latches, you have to show unreasonable delay plus reliance. So normally, it won't be unreasonable within a limitation period, but this is a unique statute. The uniqueness is not in the words, but in the facts, and therefore, the uniqueness is that it's rolling. And as long as you have a movie that's going to make money over 30 years, in year 33, they bring an action against something that didn't happen until year 30. So when the government comes in and says, oh, we'll just allow it as a defense, you know, to law, but not to injunction, law here has the same effect as an injunction. If you just leave it up to the legal part, it can bring whenever they want, as long as the movie is still making money, and therefore, it has exactly the same effect to let them say, oh, you can't recover, I mean, you can recover under law, you just can't have an injunction. Who in their right mind would go ahead and make this year after year if a huge amount of money is going to be paid to this copyright owner who delayed for 30 years and didn't even seem to own it? Well, two responses to that. First, as a general matter, we think it makes sense for the laches defense to apply in fashioning equitable relief, because that is a place where judges are exercising discretion. I understand the words. My specific question is in the copyright area as here. Yes. Once you have given them the right to apply laches to an injunction, you have given them precisely nothing, because exactly the same thing will happen to them once you bring 15 legal actions as if you gave them the injunction. And if there is a difference there, I haven't been able to think of it yet. So I don't really understand the government's position in terms of the practice. Okay. In terms of the practical offense, the Copyright Act statute specifies the particular remedies that are available, and it's fairly clearly distinguished between legal and equitable remedies. The legal remedies are actual or statutory damages, and those are limited to the past three years. And then the equitable remedies are the profits of the defendant, the essentially unjust enrichment of the defendant, and then, as you mentioned, Justice Breyer, the injunction situation. Now, we are not saying that if a plaintiff has established copyright infringement that it's an all or nothing on injunctions. This Court recognized in eBay that the plaintiff has established a copyright infringement. Breyer, you still haven't answered my question, which comes to the same thing. You're giving me legal arguments. You may be right in that. I'll look into that. But I'm saying in practice, no one in his right mind could go and continue to produce this movie when every penny is going to have to go to the copyright owner, not every penny that they spent, but every penny of profit. And who's going to do it? Because every three years they face a lawsuit. Well, that's what I'm trying to say, is that I don't think that that would be the case if infringement were shown. This Court, for example, recognized in the New York v. Tessini case that in fashioning injunctive relief, it's not just that you give an injunction or you don't give an injunction. It could be the case that in a situation like this one, for example, the Court could say, I will allow the defendant to continue with these contracts that it has entered into, to continue using this film as a derivative work, but I will pay a reasonable royalty or I will put forth, call for a reasonable royalty to the plaintiff. So there is some splitting of the difference available to the Court in fashioning  So I don't think the Court is going to do that. equitable remedy overrule the statement that you're entitled to sue for all the profits within that 3-year period? Are you saying the injunction can in effect say you don't have to pay? Well, these are two different remedies. There's the profits of the first. I understand that, but does the second eliminate the first? If it doesn't eliminate the first, Justice Breyer's point is absolutely correct. I think that both are susceptible to the Court's equitable consideration. The profits, the way that that is addressed in the Copyright Act is that it is the profits of the defendant and you subtract out what the defendant contributed. Well, then you say both are subject to equitable consideration. We were told by the Petitioner that the equitable rule of laches simply can't apply. I was going to ask, estoppel applies. Why isn't laches just the first cousin of estoppel? Estoppel is an affirmative misrepresentation. Why isn't laches here almost a misrepresentation? And I don't understand the difference between laches and estoppel in this respect. Estoppel was an equitable remedy that's been taken into the law. Right. They are related but different. Laches involves sitting on your rights to the detriment of the defendant, whereas equitable estoppel involves affirmative things that the plaintiff is doing. But suppose sitting on your rights amounted really to an affirmative representation. It seems to me very close, close enough so that I'm not sure that we should distinguish between laches and estoppel as being so that the former is unavailable at all. Well, you're right that laches is a cousin of equitable estoppel and that it's right that equitable estoppel could bar the claim entirely. The reason that we are distinguishing between law and equity are two reasons. First of all, there is a very long history that laches is unique to the courts of equity, and this Court has recognized it. It recognized it in Mack. It recognized it in the Oneida case. It recognized it in Merck. It was in the Pomeroy treatise, that this was a classic division that was only in equity. And this Court has continued to recognize it. But the second reason is that it makes sense to look to laches' principles in fashioning equitable relief in this context as opposed to the legal relief, because under the Copyright Act, when a person shows, a plaintiff shows infringement, that person is entitled to actual or statutory damages in a certain amount. And that is a mechanical calculation that we expect juries to make. But it's not the case that the plaintiff is entitled to actual damages in a certain amount. Ginsburg. Before you sit down, there's one puzzle I'd like you to address for us, and that is, your position is damages within the 3 years, okay. Injunction, you can adjust for the laches. In the patent area, also intellectual property, the Federal Circuit has said that laches may bar, how does it go, it's just the reverse, laches may bar monetary relief, but not injunctive relief. What explains the difference between, in the patent area, no monetary relief, but yes, injunctive relief, and your position in the copyright area, that the patent area has said, no monetary relief, but no injunction or a modified injunction? You're right that there is that difference. The Patent Act is different in several respects. First of all, in terms of the time period, it doesn't have a statute of limitations in which, after which a claim is barred. It says that you can only recover damages for a certain period of time. There's actually a shorter period of limitation, or a shorter period of protection in the Patent Act, and you have the Patent Act time period that was enacted well before the copyright period here. So we think that the patent context is different, but I take your point that the analysis that the Federal Circuit underwent is not the same type of analysis that we are undertaking now. Ours is based on the background principle at which Congress acted, as opposed to that analysis, which was more on policy grounds. Thank you. Roberts. Roberts. Mr. Perry. Mr. Chief Justice, and may it please the Court. The government agrees with us that the 1957 amendment did not abrogate the Lachey's doctrine. Since that's the only question presented, we submit that the Court should affirm. Now, the government has gone at great length about this law equity distinction. The Copyright Act of 1909 in section 27 abolished the distinction between law and equity for copyright cases, section 27 of the 1909 Act. The Law and Equity Act of 1915 abolished the same distinction for all civil actions. It says in any action at law, all equitable defenses may be asserted. And if one looks in Black's, for example, a reactive source, not a predictive source, what is an equitable defense? It says a defense formerly available at equity, now available in all actions. And examples are unclean hands, Lachey's, and Estoppel. That's in the Black's Law Dictionary. And then this Court, after the Rules Enabling Act of 1934, which is different, by the way, than 207.2 in the current statute, the 34 version, which is in the back of our brief, broke out law and equity, retained this Court's equitable powers, and authorized the Court to merge them. And in Rule 8, this Court did exactly that. This Court surveyed the available defenses. Sotomayor, how do you deal with the language in Holmberg, Mack, and Russell? And you're after – I've looked – I've had not myself, but my law clerk look at all of the cases, and they're absolutely right, that in every case we've applied Lachey's, it's only where there's not been an underlying statute of limitations. And in every case in which there's an underlying statute of limitations, we have said no Lachey's. Justice Sotomayor, let me answer that in two steps. The Morgan case involved a statute of limitations. The Court applied Lachey's or said Lachey's was available five times. And that's an action at law. That plaintiff brought a claim for compensatory and punitive damages. So that's the most recent version where all of those things are not true that the Petitioner says. Also, the patterns. Sotomayor, they didn't apply Lachey's there. Your Honor, this Court said that Lachey's was available five times. But the facts didn't support that, meaning that they didn't grant. It wasn't raised, Your Honor. That point wasn't raised. This Court said, however, five times that where you have a rolling statute of limitations, Lachey's is a necessary protection for the defendant because the events may move so far away from the underlying facts, which is very true here. The Holmberg case is in many ways our best case, Justice Sotomayor. Let's look at what Holmberg said. Holmberg was, remember, discussed in the legislative history. Congress, somebody in Congress focused on it. It says, first, when Congress leaves to the Federal courts the formulation of remedial details, it can hardly expect them to break with historic principles of equity. And we know from both the House and the Senate report, this 1957 statute specifically said the remedial details are up to the Court because we want the courts to continue to apply equitable considerations. So what are those equitable principles? This Court went on in Holmberg and said, first, a suit in equity may fail, though not barred by the act of limitations. That's a pretty clear equitable principle, and of course we win this case under that principle. And then the Court went on and articulated the Goosen-Gander rule, that these are two sides of the same coin, that laches and tolling go together, they travel together. They are not cousins, Justice Kennedy, they are fraternal twins. You don't get one without the other. And what the Court said is if want of due diligence by the plaintiff may make it unfair to pursue the defendant, laches, then also fraudulent conduct on the part of the defendant may make it unfair for the plaintiff to pursue fraudulent concealment. And then the Court said, and this is the critical point, cited Bailey v. Glover, which also had the Goosen-Gander rule embedded in it, it said, this equitable doctrine is read into every Federal statute of limitations. Not fraudulent concealment, but the twinned nature of tolling plus laches, that every time the courts have the power to adjust the rights and obligations of the parties using their equitable powers, that happens on the front end and on the back end. My friend, Mr. Bevis, has to respond to that by saying tolling is available, discovery is available, waiver, abandonment, acquiescence, estoppel, and all of the other equitable doctrines, eight of which are listed in Rule 8 that this Court has determined are available in all civil actions, but he says laches, which this Court also listed in Rule 8, is not available in this civil action. That is a bizarre argument, Your Honor, and it has no support whatsoever. This Court confronted the same point. Excuse me. Kagan. Kagan. But bizarre seems to me a little strong. I mean, because I take it that Mr. Bevis is making a statutory argument. I mean, he's saying not the language of the statute, but he's saying what was Congress thinking at the time. Congress was faced with all these precedents, essentially saying laches was not available. There are no cases out there, really, where laches does cut into a defined statute of limitations period. And then you have the feature that Congress knew that it was enacting these ruling statutes of limitations. You would have thought that it might have been foremost in their head, how are we going to prevent somebody from suing 30 years later? And they did nothing of the kind. They could very easily have made it clear that laches applied, or they could have set an outer limit, or they could have done a number of things, and they really didn't do any of them. So how are we to account for all that? Justice Kagan, the Congress cited Holmberg, which cites Patterson as the leading laches case, and cites Russell as well. And Patterson dealt with this very point. Patterson, which did hold. Scalia, Congress cited what? I'm sorry. The committee report cited the Holmberg case, not Congress cited. Thank you, Your Honor. Patterson case, however, squarely held, and, Justice Sotomayor, this goes to your question, too, that a claim brought within the statute of limitations, a State statute borrowed for a Federal claim, and this involved property, copyrights of property. This involved a gold mine. And it's exactly analogous. What happened there is the plaintiff sat around, had a part interest in the gold mine, sat around and waited until somebody else developed it enough to make a profit and then rushed in and demanded a share. That is what Ms. Petrella did in this case. She is demanding her share in the gold mine after my clients spent years developing    All of your investment in this is going to be offset against your profits, correct? That is not exactly clear, Your Honor. She sued in January of 2009 to pick up the profits back to January of 2006. The biggest investment was in 2005 for the 25th anniversary edition. We think she's going to go into court and say, I don't have to offset that because it's more than 3 years old. So that she wants only, she wants to skim the cream. She gets to look back and pick her 3 years old. You didn't own it. What's so bad about that? Why should you, you've gotten a lot of profits in those 18 years, and in fact at one point when she did reach out to you, you told her, why sue, you're not going to get any money. We're not making any. Your Honor, on a net basis, the film still has never made a profit for one. Well, if it's not, then we're back to the point I made. Are you disagreeing with the government's position that the court has equitable power in injunctive relief to decide how much you pay forward? Two answers, Your Honor. First, Congress looked at that, and this is the reason that the statutory damages remedy is in the statute, to encourage rights assertors to early go into court and establish priority and availability of their rights if they have them, so that if there are no profits, if there are no damages, and of course this plaintiff has no damages. Sotomayor, I don't understand. Why didn't she just go in and get a declaratory judgment when you first heard from her? Because, Your Honor, we sent, she made a demand which we refused. We get lots of demands, and we refused them. And the last letter in the series was, you have no claim. Then she did nothing. Actually, she did more than nothing. She showed up as a guest, at our guest at a party for the 25th anniversary, suggesting that she agreed with our interpretation of this. And then she didn't see her for years and years later. The events in question, the reason that the three-year, the ruling three years is, as in a Title VII case, what's not being litigated in this case, if it were to go to trial, is the last three years. It's 1961, 62, and 63. Whenever the film is released, the disputed events happened in the early 1960s. So that every year she waits for her own strategic reasons, she's getting farther away from those events. And this Court answered the same point in Patterson about the mine. It said, of course, you could apportion the profits to account for the investment, but you can never, you can never reimburse the developers for the risk of getting not. You can never reimburse them for the work they did. And so this Court said, wow, she was sitting on the sidelines, and therefore at some point the reliance interests are so great, and then we haven't talked yet about the evidentiary prejudice. These cases get so old, the witnesses have died, they are unavailable, and she is now trying to tell the court, the courts, the judicial system, that her father lied in a written representation, yet her mother, who could have testified to that, has passed on. She was going to get this copyright when her father died. Under no circumstance, even if she had sued in 92, could she have brought a claim in the 1960s. She didn't have a copyright then. Your complaint is not against the witness dying. Your complaint is about what Congress does, which is to give a person the right to keep a copyright or renew it when the individual with whom you probably dealt with is dead. That's always going to be the case. Mr. Sotomayor, she still has her copyright. She can enforce it against the world, and she still has a contractual right with MGM in which she will get participation rights pursuant to the contract. She wants to renegotiate that contract. That's what this case is about. She could have done that in 1991. She could have brought this lawsuit in 1991. We are not seeking to task her with her father's death or anything that happened before 1991. After 1991, however, Mr. Lamada, key witness as to the collaboration of the 1963 screenplay, has become unavailable to testify. Vicki Lamada, who could have established our defense that the screenplay reflects real life rather than imaginary events, because she is a central character in that, passed away. And Mrs. Petrella, who, if you read Paula Petrella's declaration, she says, My mother was up late at night typing something, implying that it was the book. Had she sued in 1991, we would have put her mother under oath and said, What were you typing? And she would have said the screenplay or something else. She would not have said the book. We believe. But we can't ask her that question because she waited long enough for all of the witnesses, not her father, all the other witnesses who have recipient knowledge to pass away. And Latches is a prejudice doctrine. It's not a timeliness doctrine. It requires delay as a trigger, but it turns on prejudice. And here we have  Kagan. Kagan.          Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. Kagan. And as you just said, Latches is, at least in part, a prejudice doctrine. Yes, Your Honor. Do you concede that that presumption is wrong? No, Your Honor. First, I think they spoke of a presumption and then didn't apply it, and certainly the district court didn't apply it. Well, that's one, you know, one understanding of the opinion is, look, that's just nothing. This Court, this Court said. But you agree with it. This Court, Justice Kagan, in the Foster v. Mansfield case in 1892, said, and I quote, after 10 years, quote, "...there is certainly a presumption of Latches which is as incumbent on the plaintiff to rebut." Which is the same concept that the Ninth Circuit articulated, although we submit it did not apply. And the Federal Circuit in the Ockerman case very carefully explained what this means. It's a Federal Rule of Evidence 301-type presumption, sometimes called a bursting bubble presumption, which says that when the defendant raises this defense, it requires the plaintiff to come forward with the burden of production of an excuse or a rationale for the delay, but the burden of persuasion always rests on the defendant because it is an affirmative defense. And the Ockerman decision is very clear on this, and to the extent the Ninth Circuit spoke of presumptions, that's exactly what it meant. Because in no place was an evidentiary presumption applied against her, and in fact, of course, this was a summary judgment case, so the evidence was undisputed. The record was irrefutable as to the prejudice. Kagan. Well, I guess partly that suggests a burden of persuasion, but partly it suggests just a kind of our starting position is that if there was conduct outside the limitations period, it was prejudicial. And I guess I want to know why that would be. Your Honor, I think it's there's a common-sense concept that if you were within the – if the claim were brought within the initial 3-year period, after the claim first accrued in 1991, you might say colloquially there's a presumption that Lachey's doesn't apply. In fact, the Sixth Circuit said that in the Churko case. Once you move farther and farther away from the initial act that starts the clock for Lachey's purposes, which may not be the same event as for statute of limitations purposes, it's another one of the disconnects between these two doctrines, the farther one gets away, it is a reality of the world, as the government notes in its brief, that the evidentiary prejudice is likely to increase because documents get destroyed, witnesses lose their memory. Kagan. Well, one can agree with that and not think that if a conduct – that if conduct happened 3 years and 2 days earlier, there's the burden of coming forward and the necessity to give a reason flips to the other side. I agree with that, Your Honor, and to be clear, the district court didn't apply any such presumption and didn't put any such burden on Ms. Petrella. So the language in the Ninth Circuit opinion is irrelevant to whether the case was tried in the district court at the summary judgment stage, and certainly irrelevant to the district court's conclusion, which is reviewed, of course, for an abuse of discretion and standard, you know, on the merits of the applicability of the Lachey's doctrine. All of which, by the way, the Petitioner never raised in the district court, in the Ninth Circuit, in the cert petition, you know, the presumption appears for the first time in the Petitioner's reply brief. The government has brought it up, but it was not, you know, it's not properly preserved. We're not afraid of it, but it's, you know, this case came here on a very simple legal question, a binary question, is Lachey's available? The Court should answer that question, yes. The details of this particular case, you know, has been reviewed by two courts on an undisputed record, and we think they got it right. Mr. Perry, you said that the act the objective is to get the copyright holder to sue early on and not to wait. But if the – if no profits are being made in that early period, and it would cost the plaintiff more to mount a lawsuit than the plaintiff could possibly receive in damages, why should the plaintiff, who has a copyright that's going to run a long, long time, sue? If things stay the same, no suit will ever be brought. Why is it unreasonable for the plaintiff to see if the copyright is worth anything? Perry, Justice Ginsburg, that's why Congress put in the statutory damages and also an attorney's fee provision, so that even if there are no profits, and many works of authorship never become profitable, there is an incentive, an economic incentive for the rights assertor to come forward to court and clarify those rights, because these are valuable assets. Even money-losing films, books, songs, and so forth are traded, are financed, are bought and sold, either individually as part of companies, and the entire economic system benefits from greater clarity and earlier resolution of rights. And I should point out in this respect, you know, my clients and the studios generally own many, many copyrights. We are on both sides of the V. This is not a plaintiff versus defendant. Breyer, but I take it in the example that Justice Ginsburg came, gave, your position, tell me if I'm wrong, is of course the defense lashes in principle applies, but the defendant will lose because the plaintiff did not wait an unreasonably long time. Perry, Justice Breyer, thank you, and I entirely agree. There is a distinction in this case between the reasons that Justice Ginsburg referred to, the availability of laches, and the applicability of laches. Our position is that laches is an available defense in every civil action. That's what Rule 8c says. Rule 8c has a list of affirmative defenses, and it's in there. It may not be a good defense in any of them. Scalia, that may just mean, you know, where it is a defense, it is an affirmative defense that has to be treated the way the Rule 8c says. I don't think that Rule 8c establishes that it applies in law as well as in equity. And that's the question I want to ask you. Do you say that laches was a defense available at law before the Federal rules were enacted, or do you say that courts continue to have the power to bring it from equity into law after the rules were enacted? And if the latter, why so? The latter, Your Honor, for three reasons. First, the Law and Equity Act of 1915 authorized the courts to do that. Second, the Rules Enabling Act of 1934 authorized the courts to do that. And third, this Court's historical practice of doing exactly the same thing with tolling in the Irwin case, with unclean hands in the Precision Instruments case, with fraud in the Hazel Adams case. But they had been used in law before the rules were enacted. I don't believe unclean hands ever had been before Precision Instruments, Your Honor. And certainly it is the case that every other equitable defense that this Court has ever looked at applies in law. This Court has never said in the modern era that any of the traditionally equitable defenses, and there are eight of them listed in Rule 8, is not available in an action that would historically have been brought at law. And by the way, I should footnote here that this is an action in equity. Had she brought this action, the only relief sought in the prayer is an accounting for profits and an injunction, both of which Chancery could have awarded, so that the claim, that question is hypothetical in this case. This is an equitable case. She seeks equitable remedies. They are subject to equitable defenses. But as a philosophical matter, Justice Scalia, if tolling, laches, or excuse me, estoppel, waiver, abandonment, unclean hands, fraud, all apply at law, what takes? If we search every Federal, every reported Federal decision since 1938, how many would we find in which the Court recognized the available of laches as a defense to a claim for legal relief? In this Court, Your Honor, you would find the Morgan case. You would find the Bay Area Laundry case, which is a MUPA case that I believe the toll Seventh Amendment analysis would be viewed as legal because it had no analogue at common law. Both of which recognize that where you have a rolling statute of limitations and an action at law, laches is an available police remedy to police the abuses. Are we on to that? Kagan's argument limited to that? Would you say laches is also available when there's no continuing violation or when there's no rolling period? Yes, Your Honor, absolutely. It is a complementary or supplementary doctrine that has always traveled together. It becomes more apparent and, frankly, more useful in the rolling statute of limitations context, as the Morgan Court made clear. It is that the kinds of cases where, because of a structural feature of the statute, the action may be temporarily very divorced or separated from the events that are being disputed, that laches may have its role to play. Can you tell us, in response to Justice Alito's second part of his question about the other cases, you talked about the two Supreme Court cases, and he said if you read every Federal decision, it's the beginning of time. So in the copyright context, every court of appeals to have considered the question has applied it to copyright cases, including legal claims, except the Fourth Circuit, although the Fourth Circuit has a subsequent trademark case that calls that, we believe, into question.  It clearly applies it. And in other contexts, there are some that it doesn't come up all that often. We cited several cases, the Teamsters case and the Maxim case from the Seventh Circuit, which has the most developed jurisprudence, both of which, in very detailed analyses by Judge Posner, which addressed all of the circuit court authorities pretty much, conclude that laches applies to actions in equity as well as actions of law, if that old distinction makes sense. And again, I'd point the Court back as well to the Gulfstream case, where this Court, the last time it looked at the Law and Equity Act of 1915, determined that for purposes of establishing appellate jurisdiction, the old law equity divide was, quote, infelicitous and not necessary anymore because of the merger, and that that was no longer necessary. And if you look at the other cases, it's the same thing. Kennedy, just assume we do, in not having too many suits simply to protect your rights in cases where the copyright may not be worth much or may not be well-established. Which rule, yours or the Petitioner's, is more helpful in this regard? So our rule, the availability of laches, has been the rule since the 19th century. This Court recognized laches in the Callahan case, in a copyright case, and has been applied in every circuit except the Fourth, which doesn't get many copyright cases. Ninety-plus percent of all copyright cases, Your Honor, are filed in the Second  Both of those courts do not get many copyright cases. That is true about the Ninth Circuit, but between the Second, Sixth, Tenth, and Eleventh, I always, I thought those circuits announced laches are available, but only in an exceptional circumstance. And I actually don't know how many cases they barred a suit, copyright suit, on, completely, on the basis of laches. Justice Sotomayor, we agree it's an exceptional circumstance, and this goes back to Justice Breyer's question. There's a difference in the availability. Well, just to answer, did you find any case where they actually applied laches? Sure. The Second Circuit in the New Era case applied laches to bar an injunction against a Scientologist. Injunction, but not the suit completely. I don't remember, actually. Certainly the Danjack case in the Ninth Circuit canvasses this question. The Ninth Circuit, I know. And this Court, of course, has barred the injunction. Could you finish answering my question? Yes, Your Honor. Justice Kennedy, our rule, the availability of laches, is the status quo. It has been the status quo for more than 100 years. It has not led to a plethora of litigation. It has not led to a bunch of frivolous suits. One of Petitioner's amici says that laches appears in something like 1 percent of all reported cases as an issue, not even, you know, the central issue. However, if the Court were to change the rule, depart from the status quo, announce for the first time in its history that this equitable doctrine is not available in this class of cases, or, by the way, Petitioner's rationale is not limited to this case, it's every case, then the studios and other potential defendants would have the economic incentive to bring declaratory actions or contract actions or other preemptive suits to clarify rights, increasing litigation, increasing complexity. It is absolutely undisputed, I would think, or indisputable at least, that the rule proposed by Petitioner would lead to more litigation, our rule leads to less. Our rule is what has always been the law. You know, our rule goes to this. And, Justice Sotomayor, if I could pick up on the question about outcomes, it is a discretionary doctrine. So some cases bar injunctions, some cases don't. This Court in the 19th century, the Sax-Lehner cases, the mineral water cases, barred the injunctions. The McLean liver pill case didn't bar the injunction. That is because the discretionary nature of the doctrine allows flexibility in its application. But it has always been known and understood, particularly in the goldmine cases, and this is just like a goldmine case, like the Patterson case, it barred the action. It said you can't get damages and you can't get an injunction. That's the defense we asserted in this case. And, again, the Petitioner did not dispute that in the district court, did not dispute that in the Ninth Circuit, did not dispute that in the cert petition. You know, that issue, we think, is a concern. Scalia, did not dispute what, what? That if laches is available, it bars the entire suit, Your Honor. Kagan, Mr. Perry, what troubles me a bit about your argument is I think that the dearth of cases on this is probably explainable by the fact that people just haven't thought that they had a laches defense when a plaintiff brought a suit within a statute of limitations period. And now if we open this all up, granted in a statutory context in which it makes some sense to give people a laches defense, if we open this all up, we'll be seeing motions that nobody ever dreamed of before. Perry, Your Honor, let me answer in two steps. In copyright cases, this has been a well understood and available defense since Judge Learned Hand's opinion in the Haas case, at least, and gets asserted with some regularity and there's a decision from every circuit just about that here's these kind of cases. So I think empirically I'm not sure that's right. Why should it be different from the Patten case? Your Honor, we don't think it should be different than the Patten case. We think at the same point the availability should be there. So you think the Federal Circuit's decisions are wrong? To the extent it says that there's a categorical bar on applying laches to injunctions, that can't be right. That can't be right after eBay. That was a pre-eBay decision that reflected the Federal Circuit's predilection for categorical rules. This Court made clear in eBay that all equitable doctrines are discretionary. Justice Kagan, the second answer to your question is this Court wouldn't be announcing it for the first time. This Court has twice looked at this very question, rolling statute of limitations, in Bay Area Laundry and in Morgan. And in both times the Court said the statute of limitations rolls forward, and in both times it said the potential abuse of that is policed by the laches doctrine. So I think that's right. Scalia, but you've said, I think you've said, that it would apply to ordinary statute of limitations. So that if you have a six-year statute of limitations and you don't sue until five years after you're subject to the defense, well, you should have sued sooner. That's correct, Your Honor, and you can think of why. I share Justice Kagan's reservation about that. Could we limit our opinion just to rolling statutes? Your Honor, it's an equitable doctrine and, of course, it can be adjusted. It can also be clarified, though, that within the initial term of statute of limitations, it very rarely will apply. But there will be cases. The Patterson case. This Court's decision in Patterson is on all fours with this case. And this Court held that laches barred the suit, even though the statute of limitations had not run. The Second Circuit's decision in New Era is an example of a copyright case where, because the books had already been published and put on the retailer's shelves, the injunctive request that would have required the recall and destruction of those books came too late because the Petitioner had actual knowledge, the plaintiff had actual knowledge, and could have sued earlier. Or you can think of a strategic situation where you know the key witness is on death's door, and you wait for that witness to keel over before you file suit, even if you're within the statute. That, you know, she who seeks equity must do equity. And there will be situations, Justice Scalia, where within that same period. It will be extraordinary, it will be unusual, but on a rolling statute, it will happen with increasing frequency, because the farther you get away from the events in question, the more likely the prejudice will arise, the evidentiary prejudice and the expectations-based or reliance prejudice, both of which were established on this record, both of which bar this claim, both of which were found by the district court, reviewed by the Ninth Circuit for an abuse of discretion and not found. Roberts, does the Latches defense bar everything in the future? It is, after all, a rolling statute of limitations. Your Honor, the extent your concern is reliance, okay, wait until the reliance is, you know, off the table, then you've got three years to go ahead. We think it bars her claim against MGM to renegotiate this contract because of those unique sequence of events. If there were no question about a past historical act, it may be that an ongoing infringement, particularly a willful infringement, which comes up often, the courts have said that past stuff isn't going to be barred, but future or, excuse me, past remedies are barred, but future injunctions may not be. Effectively, this Court said that in McLean and Menendez, the trademark cases where the liability for trademark infringement, willful trademark infringement, was clear. Here we have a binding. Roberts, this is not just injunctions. I mean, let's say they release the Blu-ray version or whatever, and so in a particular two-year period, you make a lot of money, and the suit should have been brought before that. Well, starting when the sales go down, you still have a three-year period where you're making the routine income. So here is where film is different. She doesn't have any right in the film, to be clear. She claims a right in the screenplay, and she claims the film is a derivative work. The re-release of the film, on film, on television, VHS, Laserdisc, DVD, Blu-ray, whatever gets submitted to you, it's the same alleged infringement. There's no distinction for this claim. There are other copyright claims, Mr. Chief Justice, that that does matter very much, the format and so forth. For this claim, it makes no difference whatsoever. It is just like the Morgan case, a repeat act of discrimination by the same supervisor over and over and over again, and that is why in these circumstances. Sotomayor, what about the creation of another derivative work? Your Honor, I believe if these studios – well, first of all, if somebody else were to create a different derivative work, this case doesn't bar her at all. She has all of her rights, and she can assert them against the world. Lachey's is a personal doctrine against two litigants. It's like an estoppel. It is an estoppel. Second – Briefly. Thank you, Your Honor. Second, if the studios, these studios, were to prepare a new work, a remake or a sequel, we would not take the position that Lachey's applies there because it is a new work as opposed to, in my answer to Mr. Chief Justice, the repeat release of the same work. Thank you, counsel. Mr. Bibas, 5 minutes. Thank you, Your Honor. Five points. First, Justice Sotomayor was entirely right that Holmberg, Russell, Mack, and Merck just 4 years ago make this settled law. There is a reason, Justice Kagan says, that we can't see Lachey's in cases like this. We don't see it foreclosing ongoing and future wrongs. We've never seen Lachey's used to measure the delay before the wrong occurred to foreclose ongoing and future claims. Lachey's is normally about the delay between the wrong and the suit. And this invented category of rolling status limitations, this Court in Clare carefully distinguished separately accruing discrete wrongs within a limitations period from continuing violations that reach back beyond the limitations period to claim damages beyond that. When my friend says we could have brought this exact same suit in 1991, he is absolutely incorrect. If they had stopped infringing in 2005, the entire statutory penalty for my client would have been no recovery from 1991 until 2005. Second, the only two precedents my friend can rely upon from this Court in the face of the wall of precedent noted by Justice Sotomayor are Morgan and Bay Area Laundry. Bay Area Laundry had a statutory provision, 29 U.S.C. 1399b1, that required an employer to bring claims as soon as practical. The only context in which there was an aside in that case, not even an application or holding, was saying that as soon as practical is a Lachey's-like doctrine. The only case that looks remotely close, that my friend cites in his brief, is the Morgan case. And Morgan is completely distinguishable for two reasons. The first is Morgan involved bootstrapping damages from beyond the limitations period, claiming damages from before the 180 or 300-day filing period. We claim no damages before 2006. Second, my friend is absolutely incorrect in saying there was a statute of limitations in Morgan. Title VII contains no statute of limitations. It contains a filing timeliness requirement. One of the pillars of this Court's decision in Morgan is you can reach back for damages for two years, as shown by the back pay provision. Since we don't have a limit on damages, we might possibly consider a limit, a Lachey's-like limitation in a future case. That was not the holding, it was not briefed and argued, but there was a mention of it. So Morgan was not within a statute of limitations. There was no statute of limitations. And when this Court interpreted it in Ledbetter, it understood. Morgan is about continuing violations, rescuing untimely claims for untimely damages before a limitations period. The lower courts my friend refers to, by the way, he and I have jointly not found a single case that was entirely barred in the Second, Sixth, Tenth or Eleventh circuits. In the cases that adopt a rare case standard in theory leaving the door open, they have not cited and we have not found in the Sixth, Tenth or Eleventh circuit a single case that found that standard met as to damages or injunctive relief. And yes, we do claim damages. Our complaint, Joint Appendix 30, claims damages. Joint Appendix 34, the prayer for relief, is phrased in terms of damages, not an accounting for profits. Third, Justice — oh, and by the way, the Posner opinion that was cited said that's only because there's no statutory limitations period, there's no congressional separation of powers problem, because under the statute interpreted in that Posner opinion, there was no statutory limitation period by Congress. Third, Justice Kennedy's point about estoppel as a cousin, it is not a twin. First, you can have an estoppel after a one-week delay. Estoppel has no element requiring delay. Latches requires a long delay. Estoppel requires affirmative, intentional misconduct causing laws. I'd point out those elements are substantially more stringent. Moreover, estoppel, like tolling and discovery rule, will settle law as of 1957. Tolling and discovery rule were cited in the legislative history by the legal advisor to the copyright office. But Holmberg case that was cited to that court said very different rule is the background rule as to latches, no latches within a congressional law period. Finally, let me point out that because estoppel was settled, it remains available to catch the worst cases of prejudice. It remains available for the manipulative scenarios outlined by my friend. Fourth point, uncertainty. I think it's quite salient that Justice Kagan pointed out that if we were to recognize latches here for the first time, for the first time within a congressional statute of limitations, we'd open a whole new field of litigation over latches. When do I file? This Court just a week ago in the Ray Hallett Gravel opinion said timeliness rules need to be clear, simple, predictable. Parties need to know when to file. We frequently see plaintiffs filing on or shortly before the day the limitation period expires. If this Court were to cloud that, then there would be a rush of preemptive litigation coming into court. Moreover, I think Justice Breyer's point is quite right. You shouldn't have to file 15 damages suits one after another, from Blackstone to Story to the Marshall Court. One of the principles of equity was you don't have to keep filing injunctive relief. Roberts. Thank you, counsel. The case is submitted.